# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BARRY KIRSCHENBAUM, | )
|     Plaintiff, Counter-Defendant, | ) |
| v. | ) Case No: 12 C 8683 |
| MICHAEL GILLMAN, DARRYLE GILLMAN, and ASTA HEALTHCARE COMPANY, Inc., | ) Judge Joan H. Lefkow |
|     Defendants, Counter-Plaintiffs, | ) |
| MICHAEL GILLMAN, DARRYLE GILLMAN, and ASTA HEALTHCARE COMPANY, Inc., | ) |
|     Third Party Plaintiffs, | ) |
| v. | ) |
| DIANE KIRSCHENBAUM and ALBANY BANK & TRUST COMPANY, N.A., | ) |
|     Third Party Defendants. | ) |

## OPINION AND ORDER

Third party defendant Albany Bank & Trust, N.A. moves to dismiss count II of the complaint filed by third party plaintiffs Michael Gillman ("Gillman"), Darryle Gillman, and Asta Healthcare Company, Inc. (collectively, "the Gillman plaintiffs") for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 44.) For the following reasons, the motion will be granted.[1]

---

[1] Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) and § 1367(a). Venue is proper under 28 U.S.C. § 1391(b).

# BACKGROUND[2]

Albany Bank is trustee for an Illinois land trust (the "Land Trust") that holds the commercial property commonly known as 300 West Lowell Avenue, Pontiac, Illinois ("the Lowell Avenue property"). The Land Trust is owned by Asta Pontiac Properties ("Asta Properties"), an Illinois limited liability company. Asta Properties has four members: Barry Kirschenbaum ("Kirschenbaum"); Diane Kirschenbaum; Gillman; and Darryle Gillman. Each member owns a 25% interest in the company. Gillman is the manager of Asta Properties.

In 2002, Albany Bank (in its own capacity) loaned $1,880,000 to Albany Bank (in its capacity as trustee for the Land Trust). The loan was documented by an installment note ("the First Note") and was secured by a mortgage on the Lowell Avenue property. In addition, Albany Bank required that the members of Asta Properties guarantee the loan. The First Note provided for monthly payments, with final payment due January 1, 2012. The final payment date was later extended to March 1, 2012.

In 2009, Albany Bank (in its own capacity) loaned an additional $900,000 to Albany Bank (in its capacity as trustee) to pay for improvements to the Lowell Avenue property. This loan was documented by a loan agreement and another installment note ("the Second Note"). The Second Note also was secured by a mortgage on the Lowell Avenue property and guaranteed by the members of Asta Properties. The Second Note provided for monthly payments, with final payment due on January 1, 2019.

---

[2] The following facts are taken from the allegations in the third party complaint (dkt. 44) and are presumed true for the purpose of resolving the pending motion. *See Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

On May 10, 2011, Albany Bank emailed a package of loan documents to Gillman, including (1) an installment note in the amount of $900,000 to replace the Second Note, which provided for monthly payments with final payment due on January 1, 2019 (the same maturity date as the Second Note), (2) a mortgage loan request, (3) a modification of mortgage, (4) a letter of direction directing Albany Bank (as trustee for the Land Trust) to execute the new note, and (5) guaranties to be signed by Kirschenbaum and Gillman. Gillman reviewed and executed the documents. Gillman understood that Albany Bank would communicate separately with Kirschenbaum to obtain his approval.

After Gillman returned the signed documents, Kirschenbaum and Albany Bank communicated directly with one another regarding the re-documentation of the Second Note. On June 10, 2011, Kirschenbaum signed and returned the letter of direction instructing Albany Bank (as trustee to the Land Trust) to sign the "Promissory Note dated April 30, 2011." The same day, Albany Bank (as trustee) executed an installment note dated April 30, 2011 ("the Replacement Note"). But it was not the same note that had been provided to Gillman; instead of maturing on January 1, 2019, the Replacement Note matured on March 1, 2012 (the same maturity date as the First Note). Gillman never reviewed or authorized the Replacement Note and Albany Bank did not deliver a mortgage loan request to Gillman for the Replacement Note. Furthermore, although Gillman had signed guaranties individually and on behalf of Asta Properties and Asta Healthcare with respect to the re-documentation of the Second Note, Albany Bank did not require that Kirschenbaum execute a guaranty. Neither Albany Bank nor Kirschenbaum informed Gillman that the Replacement Note had a different maturity date than the one reviewed by Gillman or that Kirschenbaum had not been required to sign a guaranty.

3

About a year later and after the maturity of the First Note and the Replacement Note, Albany Bank assigned all of its rights under the First Note, Second Note, Replacement Note (collectively, "the Notes"), and related mortgages on the Lowell Avenue property to Kirschenbaum. Albany Bank continued to act as agent to service the loans.

On October 30, 2012, Kirschenbaum filed this action against Gillman, Gillman's wife, and Asta Healthcare, alleging that the obligations under the Notes had matured and that the Gillmans and Asta Healthcare were liable for the aggregate amount outstanding of $2,170,219.33 under the terms of their guaranty agreements. From March 2012, when the debts at issue allegedly matured, until at least June 2013, Albany Bank continued to send a monthly invoice to Asta Properties for the principal and interest due on the First Note and the Replacement Note. Albany Bank did not provide any statement that indicated either of the notes was in default.[3]

On June 27, 2013, the Gillman plaintiffs filed counterclaims against Kirschenbaum and a third party claim against Albany Bank for fraud, alleging that Albany Bank reneged on its promise to refinance the First and Second Notes and executed the Replacement Note without Gillman's approval or authorization. The complaint asserts that by taking these actions, Albany Bank was able to receive full payment of the First Note and Replacement Note seven years ahead of schedule and extricate itself from a simmering dispute between Kirschenbaum and Gillman. In addition, Kirschenbaum was able to put pressure on the Gillman plaintiffs by purchasing the Notes, declaring default, and initiating this action to collect on the guaranties.

Albany Bank has now moved to dismiss the fraud claim under Rule 12(b)(6), arguing that

---

[3] Neither Albany Bank nor the Gillman plaintiffs discuss whether Albany Bank sent an invoice for the final balloon payments allegedly owing in March 2012.

its actions were permitted under the terms of the loan documents and that the complaint fails to state a claim upon which relief may be granted.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s pleading threshold, the pleader must detail "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Gen. Elec.*, 128 F.3d at 1078 (internal quotation marks and

citation omitted); *Vicom, Inc.* v. *Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Stated differently, the complaint must include the "who, what, when, and where of the alleged fraud." *Uni\*Quality, Inc.* v. *Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks omitted).

**ANALYSIS**

As an initial matter, the Gillman plaintiffs filed suit against Albany Bank & Trust Company, N.A., but they appear also to assert claims against Albany Bank in its capacity as trustee of the Land Trust. The court refuses to expand the suit to include the bank as trustee, in which capacity it has separate and distinct obligations and duties. *See generally Network Holdings, Inc.* v. *FDIC*, No. 10 C 3247, 2012 WL 3264940 (N.D. Ill. Aug. 8, 2012) (discussing duties of Illinois land trustees). The court will only examine the complaint as it relates to Albany Bank in its own capacity.[4]

Albany Bank argues that the fraud claim must be dismissed because the terms of the underlying loan documents permit all of its allegedly fraudulent actions. Specifically, Albany Bank contends that the guaranty agreements (1) waived the requirement that the bank make a demand prior to calling the guaranties, (2) waived the requirement that the bank notify the

---

[4] The doctrine of misnomer is inapplicable in this case. Under Illinois law, "[a] misnomer occurs where the plaintiff brings an action and serves summons upon the party intended to be made the defendant, thus giving actual notice of the lawsuit to the real party in interest, but the process and complaint do not refer to the person by his correct name." *Cue* v. *Learjet Inc.*, 837 F. Supp. 2d 788, 791 (N.D. Ill. 2011) (quoting *Shaifer* v. *Folino*, 650 N.E.2d 594, 597, 272 Ill. App. 3d 709, 208 Ill. Dec. 900 (1995)). Here it appears that the Gillman plaintiffs have attempted to assert claims against Albany Bank both as lender and as trustee, but have only named one party. Misnomer allows a plaintiff to replace one defendant with another; it does not allow a plaintiff to expand the circle of defendants. *Cf. United States* v. *Fed. Res. Corp.*, No. 2:CV-11-127-BLW, 2013 WL 4495798, at *1 (D. Idaho Aug. 16, 2013) (addition of defendant in his individual capacity, who has already been named in his capacity as trustee, constitutes addition of new defendant). The Gillman plaintiffs will be given leave to replead.

6

Gillman defendants of the creation or existence of any indebtedness, (3) authorized the bank to sell the Notes without notice to the Gillman plaintiffs, and (4) authorized the bank to sell, assign, or transfer the guaranty. (Dkt. 46 at 3-6.) Albany Bank also argues that under the terms of the Notes, it was under no obligation to refinance the loans. (*Id.* at 6-7.)

The Gillman plaintiffs respond to Albany Bank's argument by narrowing their claim:

> Albany Bank's Motion to Dismiss is based on the argument that it was permitted to do all the activities alleged in the Third Party Complaint by virtue of the loan documents. Where this argument collapses is in the fact that Albany Bank *fraudulently, deceptively, and without notice or authorization signed the Replacement Note*.

(Dkt. 49 at 5 (emphasis in original), *see also id.* at 10 (defining the fraud as "[e]xecuted the Replacement Note without authority").) The Gillman plaintiffs lay blame for the fraud at the foot of the trustee: "[I]n [Albany Bank's] role [as trustee], it had *limited* and *specific* powers. Those powers included executing the loan documents *only when they were authorized and directed to do so* by Gillman." (*Id.* at 7 (emphasis in original)). But the Gillman plaintiffs assert that this does not get Albany Bank as lender "off the hook" because "Albany Bank as lender was fully aware that Albany Bank the Trustee was not authorized to execute the Replacement Note, and was just as fully aware that Albany Bank the Trustee was committing fraud in doing so." (*Id.*)

To state a claim for fraud under Illinois law, "a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Reger Dev., LLC* v. *Nat'l City Bank*, 592 F.3d 759, 766 (7th Cir. 2010) (citing *Redarowicz* v. *Ohlendorf*, 441 N.E.2d 324, 331, 92 Ill. 2d 171, 65 Ill. Dec. 411

7

(1982)). The Gillman plaintiffs do not adequately allege that Albany Bank in its capacity as lender made a false statement of material fact. Although Albany Bank may have prepared the Replacement Note knowing that the trustee was unauthorized to sign it,[5] the Gillman plaintiffs do not cite, and the court cannot find, any cases that stand for the proposition that a lender can be liable for fraud when it makes a loan to a party that is not authorized to sign the loan agreement, even if the lender knows the party has not received the requisite approval.

The cases on which the Gillman plaintiffs rely provide little guidance. First, they cite the rather dusty case *Manufacturers' National Bank* v. *Barnes*, 65 Ill. 69, 16 Am. Rep. 576 (1872), for the position that a lender is obligated to perform only those actions that it knows are requested and authorized by the customer. *Barnes* held that the defendant bank was "guilty of great negligence" by allowing a clerk to continue to draw checks on his employer's account after his authority to do so had expired. *Id.* at 72. It did not address whether a bank could be held liable for fraud under such a circumstance. Next, the plaintiffs cite *Citizens National Bank of Downers Grove* v. *Morman*, 398 N.E.2d 49, 78 Ill. App. 3d 1037, 34 Ill. Dec. 374 (1979), for the proposition that a "material alteration of a [contract] made after its execution by a party . . . amounts to fraud against the nonconsenting party . . . ." *Id.* at 55. *Morman*, however, concerned the fraudulent alteration of a lease and did not discuss under what circumstances knowledge of such an alteration can be imputed to a third party and that third party can be liable for fraud. *Morman* also is distinguishable because it concerned the alteration of an existing contract, not the unauthorized execution of a new and different one. Read in the light most favorable to the

---

[5] The court notes that the Replacement Note does not appear to require Albany Bank's signature in its capacity as lender.

Gillman plaintiffs, their complaint fails to plausibly suggest that Albany Bank in its capacity as lender is liable for fraud due to the trustee's actions.[6]

**CONCLUSION**

Albany Bank's motion to dismiss is granted without prejudice. The Gillman plaintiffs are given leave to file an amended complaint on or before February 28, 2014. This case is set for status on March 6, 2014 at 11:00 a.m.

Date: February 7, 2014

                                                          U.S. District Judge Joan H. Lefkow

---

[6] In their response, the Gillman plaintiffs attempt to add a claim of conspiracy to their complaint against Albany Bank. Although "plaintiffs in federal courts are not required to plead legal theories," *Hatmaker*, 619 F.3d at 742, this does not vitiate their obligation to give fair notice of the claims against the defendant. *See, e.g., EEOC* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). The current complaint does not give fair notice of a conspiracy claim. The Gillman plaintiffs may include this claim if they so choose in their amended complaint.

9